**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDRE TEEL, As friend, guardian and
next of kin of D.T., J.L, R.L.,J.L., and
E.L., minor children and REBECCA
HAINEY, As friend, guardian and next
of kin of D.T., J.L, R.L.,J.L., and E.L.,
minor children,

      Plaintiffs,

v.                                                                    Case No. 3:14-cv-640-J-32PDB

AARON'S, INC.,

      Defendant.

_____

## O R D E R

This case is before the Court on Defendant's Motion to Dismiss or Stay

Proceedings and Compel Arbitration.   (Doc. 4).   Plaintiffs have filed a response in

opposition (Doc. 6) and Defendant has filed a reply.   (Doc. 12).   Plaintiffs have filed

a Motion for Emergency Hearing (Doc. 13), which the Court construes as a motion

for preliminary injunctive relief, and Defendant responded in opposition.   (Doc. 15).

The Court held a hearing on the pending motions on October 28, 2014, and the

transcript of that proceeding is incorporated herein.[1]

_____

[1] The Court delayed ruling on the motions and asked the Magistrate Judge to
conduct settlement talks. Despite the Magistrate Judge's ongoing efforts, the parties
have not reached a settlement.

## I.      Background

Defendant Aaron's Furniture Rental ("Aaron's") allegedly delivered bunk beds infested with bed bugs and black mold to Plaintiffs Andre Teel and Rebecca Hainey's home.   Plaintiffs, individually and as friends, guardians, and next of kin of their five minor children D.T., J.L., R.L., J.L., and E.L., brought suit against Aaron's for economic damages and emotional distress they have suffered and are suffering as a result.   As this case is before the Court on a motion to dismiss, the Court takes as true the facts in Plaintiffs' complaint and attached exhibits.   Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).

Hainey filled out Aaron's Lease Order Form on November 29, 2013, in which she provided Aaron's her income and personal references in order to rent furniture from Aaron's in the future.   (Doc. 4-2, Ex. B at 11).   Hainey then signed lease purchase agreements with Aaron's on November 29, 2013, and December 6, 2013 for the purpose of renting a left and right sectional, a table, four chairs, and a bench for her home.   (Doc. 4-2, Ex. B at 5, 8).   On each of these dates, Hainey also signed separate arbitration agreements with Aaron's which stated, in relevant part, that

> YOU AND WE AGREE THAT ANY AND ALL DISPUTES ARISING
> OUT OF OR RELATING IN ANY WAY TO YOUR AGREEMENT(S)
> WITH AARON'S... [or] THE PRODUCTS OR SERVICES PROVIDED
> TO YOU BY AARON'S . . . SHALL BE RESOLVED EXCLUSIVELY IN
> BINDING ARBITRATION RATHER THAN LITIGATION IN COURT.
> (Doc. 4-1, Ex. A).[2]

---

[2] The particulars of the arbitration process are also contained in this document. (Doc. 4-1, Ex. A).

On December 9, 2013, Aaron's delivered the furniture covered in the lease purchase agreements to Plaintiffs' new home.   (Doc. 1 at ¶ 22).   That same day, Plaintiffs also called Aaron's to inquire about renting bunk beds for their children. (Doc. 6 at ¶ 14).   Aaron's management informed Plaintiffs that it did not have bunk beds in stock, but would retrieve bunk beds from the inventory of another store and deliver them to Plaintiffs' home.   (Doc. 6 at ¶ 15).

Late at night on December 11, 2013, Aaron's delivered bunk beds to Plaintiffs' home; however, Plaintiffs signed neither a lease purchase agreement nor an arbitration agreement for this delivery.   (Doc. 6 at ¶¶ 16-17; <u>see</u> unsigned lease purchase agreements, Doc. 4-2, Ex. B at 1, 3).   Soon thereafter, Plaintiffs and their five children, D.T., J.L., R.L., J.L., and E.L. began experiencing itching and scratching.   (Doc. 1 at ¶ 22).   J.L. and R.L. had to be taken to the hospital for upper respiratory problems and red bumps.   (Doc. 1 at ¶ 24).   From January 2014 to April 2014, Plaintiffs' home became infested with bedbugs and black mold, which Plaintiffs determined were caused by the bunk beds and mattresses that were delivered on December 11, 2013.   (Doc. 1 at ¶¶ 25-28).

Plaintiffs allege that Aaron's failed to conduct an adequate pre-inspection of the bunk beds and that Aaron's knew that its furniture was infested with bed bugs and unfit for homes.   (Doc. 1 at ¶¶ 43-44).   On April 3, 2014, Plaintiffs reported the bed bug and black mold infestation to Aaron's corporate office as well as the local store manager, Tony Garman. (Doc. 1 at ¶¶ 31-32).   Garman allegedly admitted that the bunk beds were the source of the bed bug infestation (Doc. 1 at ¶ 35); however,

Plaintiffs allege that Aaron's attempted to cover up the infestation and did not take adequate steps to remedy the situation.   (Doc. 1 at ¶¶ 41-42).

On June 3, 2014, Plaintiffs filed a six-count complaint against Aaron's, seeking damages in the amount of $1,500,000 for violations of Florida's Deceptive and Unfair Trade Practices Act (Count I); breach of contract (Count II); unjust enrichment (Count III); breach of implied warranty of merchantability (Count IV); gross negligence (Count V); and intentional infliction of severe emotional distress (Count VI) (Doc. 1).[3]   Aaron's moved to dismiss the complaint or stay the proceedings and compel arbitration, asserting that the Plaintiffs' complaint failed to state a cause of action in Counts I, III, IV, V, and VI, and that Count II must be dismissed because Plaintiffs failed to attach three of the four lease purchase agreements.   (Doc. 4).   Alternatively, Aaron's argues that the mandatory arbitration agreements Hainey signed in conjunction with the lease purchase agreements on November 29, 2013 and December 6, 2013 apply to all future transactions between it and Plaintiffs.   (Doc. 12).   Plaintiffs contend that they should not be forced to arbitrate their claims because they signed neither a lease purchase agreement nor an arbitration agreement with respect to the bunk beds delivered on December 11, 2013.   (Doc. 6).   Moreover, Plaintiffs allege that because Teel never signed an arbitration agreement or a lease purchase agreement with Aaron's, any arbitration provision is inapplicable as to him.

---

[3] Aaron's is a Georgia corporation and Plaintiffs allege that the matter in controversy is greater than $75,000, so this Court has jurisdiction pursuant to 28 U.S.C. §1332.

## II.     Preliminary Injunction[4]

### A. Standard

A preliminary injunction is only appropriate where the moving party demonstrates (1) a substantial likelihood of success in the ultimate case, (2) that it would suffer irreparable harm in the absence of an injunction, (3) that a balance of equities favors granting the injunction, and (4) that the public interest would not be harmed by the injunction.   Mesa Air Grp., Inc. v. Delta Air Lines, Inc., 573 F.3d 1124, 1128 (11th Cir. 2009).   An "irreparable" injury is one that cannot be undone through monetary remedies.   Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).   It must be "neither remote nor speculative, but actual and imminent."   Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)).   Furthermore, the more likely it is that adequate compensatory or other relief will be available at a later date in the ordinary course of the litigation process, the less appropriate it is to label a harm "irreparable."   Id.   The moving party must clearly establish each of the four criteria discussed above, since a preliminary injunction is an extraordinary and drastic remedy.   Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).   If any one of these elements is not proven,

---

[4] Even when a dispute is subject to mandatory arbitration under the FAA, a district court has subject matter jurisdiction under § 3 of the FAA to grant preliminary injunctive relief prior to sending the dispute to arbitration so long as the party seeking injunctive relief satisfies the traditional criteria prerequisite to the granting of a preliminary injunction.   See Talk-Fusion, Inc. v. Ulrich, 2011 WL 2681677, *8 (M.D. Fla. June 21, 2011).

there is no need to address the other three factors.   Sofarelli v. Pinellas Cnty., 931 F.2d 718, 724 (11th Cir. 1991).

### B. Discussion

Plaintiffs fail to meet the requirements for a preliminary injunction.   First, they do not demonstrate that they have a substantial likelihood of success on the merits of the case.   Second, because Plaintiffs themselves suggest that their injuries can be undone through monetary remedies – they seek $1,500,000 in damages – their injuries are not "irreparable."   Finally, while a typical preliminary injunction seeks simply to maintain the status quo pending a resolution on the merits of the case, here Plaintiffs seek to force Aaron's to act (though in some unspecified way). This would constitute a "mandatory affirmative injunction," and for it to be granted Plaintiffs would face an even higher burden than that which they have already failed to meet.   See Haddad v. Arnold, 784 F.Supp.2d 1284, 1295 (M.D. Fla. 2010) (explaining that because a mandatory affirmative injunction seeks to force another party to act, rather than simply maintain the status quo, a plaintiff seeking such relief bears a heightened burden of demonstrating entitlement to preliminary injunctive relief).   As Plaintiffs have failed to prove either a substantial likelihood of success on the merits or an irreparable injury, and they do not attempt to describe any specific conduct of Aaron's which they seek to enjoin, the Court need not address the remaining factors.

### III.    Motion to Dismiss or Stay Proceedings and Compel Arbitration

### A.   Arbitrability of Claims

#### i.  Standard

In enacting the Federal Arbitration Act ("FAA"), Congress evinced a "liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).   Thus, courts must "rigorously enforce agreements to arbitrate."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).   However, because arbitration is a matter of contract, the FAA requires a party to submit to arbitration only those disputes which it has agreed to arbitrate. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). When ruling on a motion to compel arbitration, courts must therefore determine whether the parties agreed to arbitrate the dispute before considering whether legal constraints external to the parties' agreement foreclose arbitration of those claims. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

In determining whether parties agreed to arbitrate, courts distinguish between challenges to the validity of a contract as a whole and challenges specifically to the arbitration clause.   Under Section 4 of the FAA, federal courts are instructed to compel arbitration once they are satisfied that the making of the agreement for arbitration or its validity is not at issue.   Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403 (1967).   This is because arbitration clauses are severable from their underlying contracts as a matter of law, so a broad arbitration clause can require arbitration of a claim challenging the validity of the contract as a whole.   Id.

However, if there is a challenge to the arbitration clause itself, the federal court may adjudicate the clause's validity.   Id. at 404.

Plaintiffs argue that the arbitration agreements signed in connection with the November 29, 2013 and December 6, 2013 lease purchase agreements are inapplicable to the December 11, 2013 rental transaction for which they never signed a lease purchase agreement or a separate arbitration agreement.   The Eleventh Circuit has acknowledged that "an arbitration clause in an agreement sometimes can require arbitration of a dispute arising not from the agreement itself but from another source, including another agreement[,] . . . when the arbitration clause applies to the dispute at issue."   Northbrook Indem. Co. v. First Auto. Serv. Corp., 2008 WL 3009899, *6 (M.D. Fla. Aug. 1, 2008) (quoting Int'l Underwriters AG v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1345 (11th Cir. 2008)).   However, an arbitration clause in one contract does not always apply to every contract between the parties.   See Klay v. All Defendants, 389 F.3d 1191, 1201 (11th Cir. 2004) (refusing to compel arbitration of certain claims asserted by physicians based on arbitration agreements they had signed with HMOs regarding the provision of services unrelated to the claims at issue).

In determining whether an arbitration clause found in one agreement can require arbitration of a dispute arising from another agreement, courts consider a variety of factors.   Courts have found that an arbitration provision found in a principal or umbrella agreement can require arbitration of a dispute arising from a subsidiary agreement.   Compare Consol. Brokers Ins. Servs., Inc., 427 F.Supp.2d

1074 (D. Kan. 2006) (applying arbitration clause in a broader "General Agent Contract" to a "Marketing General Agent Agreement Contract" that furthered the purposes of the "General Agent Contract"), with <u>Int'l Underwriters AG</u>, 533 F.3d at 1346, 1349 (holding that narrow arbitration provision found in subsidiary escrow agreement could not compel arbitration of dispute arising out of principal agreement when there was no reference to arbitration in the principal agreement and the principal agreement could have existed without the escrow agreement).

 Similarly, courts frequently apply arbitration provisions in one agreement to other agreements which pertain to the same subject matter. <u>See, e.g.</u>, <u>ARW Exploration Corp. v. Aguirre</u>, 45 F.3d 1455 (10th Cir. 1995) (compelling arbitration of a dispute arising out of a sixth joint venture contract that did not contain an arbitration clause when five preceding joint venture agreements relating to the same oil and gas ventures between the parties contained broad arbitration provisions); <u>Northbrook Indem. Co.</u>, 2008 WL 3009899 at *8 (holding that when a dispute brought pursuant to four subsidiary contracts "touche[d]" on the matters to be arbitrated in accordance with the principal agreement, arbitration was proper despite the fact that the four contracts did not contain arbitration provisions); <u>NPR Grp., Inc. v. Hydropress, LLC</u>, 2007 WL 201259 at *3 (S.D. Fla. Jan. 24, 2007) (holding that the broad arbitration provision found in a more specific "letter agreement" could compel arbitration of a dispute arising out of a broader umbrella agreement when the two agreements governed the same business relationship); <u>Consol. Brokers Ins. Servs.</u>, 427 F.Supp.2d at 1083 (finding that even though two

agreements did not refer to each other, that they related to the same subject matter and functioned as two interrelated parts of one transaction supported arbitration of dispute arising out of agreement lacking arbitration provision).

In contrast, courts are unwilling to apply an arbitration provision from one contract to another contract on a different subject.  See, e.g., Seaboard Coast Line R. Co. v. Trailer Train Co., 690 F.2d 1343 (11th Cir. 1982) (holding that contract granting railroads a license to use flat rail cars was a contract of limited application that did not cover subsequent agreements by which railroads leased flat cars from the company, and thus that arbitration agreement in licensing contract did not apply to dispute arising out of the lease arrangements); G.R. Harvill, Inc. v. Patel, 2011 WL 3607020 at *2, (S.D. Ala. Aug. 16, 2011) (finding fact that one construction contract lacking arbitration clause dealt with a different kind of service than other contracts containing arbitration clauses weakened any attempt to argue that contract lacking arbitration clause was intended to contain an arbitration agreement when it was made).

In addition to the relationship between two or more agreements and their subject matter, courts consider whether the parties to the separate agreements are

identical,[5] whether the underlying agreements were executed closely in time,[6] and

the breadth of the language used in the arbitration clause.[7]

### ii.   Discussion

On November 29, 2013 and December 6, 2013, Plaintiffs signed lease purchase

agreements (Doc. 4-2, Ex. B at 5, 8) and arbitration agreements (Doc. 4-1, Ex. A)

with Aaron's, which arbitration agreements contain a provision that "YOU AND WE

AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF OR RELATING IN

ANY WAY TO YOUR AGREEMENT(S) WITH AARON'S . . . [or] THE PRODUCTS

---

[5] Consol. Brokers Ins. Servs, Inc., 427 F.Supp.2d at 1082; see also Northbrook Indem. Co., 2008 WL 3009899 at *8 (finding arbitration of dispute arising out of contracts lacking arbitration provisions was supported by the fact that all agreements governed the same ongoing relationship between the same parties); ARW Exploration Corp. 45 F.3d at 1462 (finding fact that each party to sixth joint venture agreement lacking arbitration provision also executed at least one of five other joint venture agreements containing arbitration provision supported arbitration of dispute arising under sixth joint venture agreement).

[6] The closer in time two or more agreements are executed, the more likely courts will compel arbitration of a dispute arising under an agreement lacking an arbitration clause when a related contract contains a broad arbitration clause. Consol. Brokers Ins. Servs., Inc., 427 F.Supp.2d at 1082.

[7] The existence of a broad arbitration provision in one agreement appears to be a necessary, but not sufficient, factor for compelling arbitration under a second agreement lacking an arbitration provision.   See Consol. Brokers Ins. Servs., Inc., 427 F.Supp.2d at 1082 (listing a [narrow] arbitration clause which specifically excludes certain claims as a factor against compelling arbitration of a dispute arising out of a separate agreement not containing an arbitration provision); compare ARW Exploration Corp., 45 F.3d at 1462 (reading the language "any matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement" in the arbitration provision broadly therefore supporting arbitration of dispute arising out of agreement not containing arbitration provision), with Int'l Underwriters AG, 533 F.3d at 1346 (reading the arbitration provision's application to "any dispute arising pursuant to or in any way related to this [escrow] Agreement or the transactions contemplated hereby" narrowly, thus not supporting arbitration of dispute arising out of separate agreement not containing arbitration provision).

OR SERVICES PROVIDED TO YOU BY AARON'S . . . SHALL BE RESOLVED EXCLUSIVELY IN BINDING ARBITRATION RATHER THAN LITIGATION IN COURT." (Doc. 4-1, Ex. A). On December 11, 2013, Plaintiffs received bunk beds from Aaron's but did not sign a lease purchase agreement or an arbitration agreement. (Doc. 6 at ¶¶ 16-17; see unsigned lease purchase agreements, Doc. 4-2, Ex. B at 1, 3). Aaron's alleges that the arbitration agreements signed on November 29, 2013 and December 6, 2013 applied to all future transactions between it and Plaintiffs, regardless of whether Plaintiffs signed a contract for such transactions, because the arbitration agreement states that it applies to all disputes arising out of products provided by Aaron's. (Doc. 12 at ¶¶ 5-9)). Plaintiffs argue that they should not be forced to arbitrate their claims because they neither signed a lease purchase agreement nor an arbitration agreement with respect to the bunk beds delivered on December 11, 2013. (Doc. 6 at ¶ 3). Because Plaintiffs' challenge goes to the applicability of Aaron's arbitration agreement, it is for this Court, not an arbitrator, to adjudicate the enforceability of the November 29, 2013 and December 6, 2013 arbitration agreements with respect to the December 11, 2013 rental transaction. See Prima Paint Corp., 388 U.S. at 404.

The Lease Order Form, signed by Hainey on November 29, 2013, suggests that the November 29, 2013, December 6, 2013, and December 11, 2013 rental transactions were interrelated parts of one larger transaction between Aaron's and Plaintiffs. The documentation customers provide in the Lease Order Form enables them to rent furniture from Aaron's in the future, not just on the date the Lease

Order Form is signed.   (Doc. 4-2, Ex. B at 11).   Furthermore, even though Plaintiffs did not sign an arbitration agreement with respect to the December 11, 2013 rental transaction, and none of the lease purchase agreements referred to the December 11, 2013 rental transaction, all three transactions related to the same subject matter - the rental of furniture for Plaintiffs' house.

The Court also finds it significant that the rental transactions were all between the same parties, Aaron's and Hainey, and Plaintiffs accepted the December 11, 2013 furniture delivery after Hainey had already signed two lease rental agreements and arbitration agreements with Aaron's.   Moreover, the rental transactions all occurred within a two week period.

Finally, the Court notes the broad language of Aaron's arbitration agreement. (Doc. 4-1 at ¶ 1).   While this broad language alone is insufficient to compel arbitration of the dispute over the December 11, 2013 transaction, it is one additional factor in support of arbitration.

In light of the interrelated nature of the rental transactions, that the rental transactions relate to the same subject matter and were executed by the same parties closely in time, and the breadth of Aaron's arbitration agreement, the arbitration agreements signed on November 29, 2013 and December 6, 2013 cover the December 11, 2013 rental transaction.[8]

---

[8] Agreement by all parties to arbitrate is required before a court will enforce an arbitration agreement. Because Aaron's did not obtain Plaintiffs' signatures on an arbitration agreement for the December 11, 2013 transaction, this is a close call. This decision is based on the totality of the circumstances and is limited to its facts.

This Court need not address Plaintiffs' argument that the December 11, 2013

## B.  Applicability of Arbitration Agreement to Non-Signatory Plaintiffs

### i.  Standard

While a party can only be required to submit to arbitration those disputes which he has agreed to submit (see United Steelworkers, 363 U.S. at 582), this does not necessarily mean that an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.   The scope and validity of arbitration agreements is governed by state contract law, and Florida courts have recognized that Section 2 of the FAA, in creating substantive federal law regarding the enforceability of arbitration agreements, requires courts "to place such agreements upon the same footing as other contracts."   Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).   Therefore "traditional principles of state law [that] allow contracts to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" also apply to arbitration agreements.   Id. at 631.

---

unsigned lease purchase agreements are unenforceable because a) Plaintiffs accepted the December 11, 2013 furniture delivery even though they never signed a lease purchase agreement on this date and b) Plaintiffs are attempting to bring claims for breach of contract based on those lease agreements.   Plaintiffs cannot both challenge the validity of a lease purchase agreement and benefit from its enforcement.   See Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1312 (11th Cir. 2005) (holding that a plaintiff could not rely on a promissory note to establish certain statutory claims while simultaneously avoiding her obligation under the promissory note to arbitrate such claims).

Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes. Blinco, 400 F.3d at 1312.   Courts have applied this principle to compel arbitration where non-signatories to contracts containing an arbitration clause have sought to enforce their alleged contractual rights.   Id.   "The purpose of the doctrine [of equitable estoppel] is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration."   In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002) rev'd on other grounds (internal quotation omitted).

### ii.  Discussion

Plaintiffs claim that because Teel never signed a lease purchase agreement or an arbitration agreement with Aaron's, he should not be compelled to arbitrate. (Doc. 6 at ¶ 3).   However, Plaintiffs' own Complaint states that "Plaintiffs Andre Teel and Rebecca Hainey paid valuable consideration and executed an enforceable contract with Aaron's for the rental/purchase of home furnishings/furniture."   (Doc. 1 at ¶ 11).   Furthermore, each of Plaintiffs' six counts rely on the unsigned lease purchase agreements (Doc. 4-2, Ex. B at 1, 3) to establish claims against Aaron's. (Doc. 1 ¶¶ 1, 20, 65, 67, 71, 74, 77, 78, 79, 80, 81, 82, 83, 87, 90, 91, 96, 97, 107). And this Court has already found that the December 11, 2013 transaction represented by the unsigned agreements must be arbitrated.   By relying on the existence of the lease purchase agreements to establish his claims against Aaron's,

but repudiating its existence when it works to his disadvantage by requiring arbitration, Teel is trying to "have his cake and eat it too," the very situation equitable estoppel is designed to prevent.   Because the minor Plaintiffs' claims also rely on the existence of the lease purchase agreements, their status as non-signatories similarly does not prevent the arbitration agreements from applying to them.

Accordingly, it is hereby

**ORDERED:**

1.   Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 13) is **DENIED**.

2.   Aaron's Motion to Dismiss or Stay Proceedings and Compel Arbitration (Doc. 4) is **GRANTED** insofar as the parties shall arbitrate in accordance with "Aaron's Mandatory Arbitration Agreement." (Doc. 4-1).   The case is **STAYED** pending arbitration.   The clerk is directed to administratively close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 24th day of March, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

eh
Copies to:

Counsel of record